1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE

8    ALAN L. MEADOWS,

9                          Plaintiff,                CASE NO. C17-5223-MAT

10          v.

11   NANCY A. BERRYHILL, Acting              ORDER RE: SOCIAL SECURITY
     Commissioner of Social Security,        DISABILITY APPEAL

12                         Defendant.

13

14          Plaintiff Alan L. Meadows proceeds through counsel in his appeal of a final decision of the

15   Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

16   Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an

17   Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the administrative

18   record (AR), and all memoranda of record, this matter is AFFIRMED.

19                    **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1963.[1]  He has a high school diploma and two years of college

21   education, and additional training as a network manager.  (AR 296.)  He previously worked as a

22
     _____

23          [1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

     ORDER RE: SOCIAL SECURITY
     DISABILITY APPEAL
     PAGE - 1

network manager and security guard in the United States Army, a retail salesperson at a sporting goods store, and a shift supervisor for security with the Department of Defense. (AR 296, 312.)

Plaintiff applied for DIB in April 2014, alleging that he was disabled as of August 26, 2013. (AR 257-60.) That application was denied initially and upon reconsideration and Plaintiff timely requested a hearing. (AR 179-81, 183-86.)

On August 25, 2015, ALJ Michael Gilbert held a hearing, taking testimony from Plaintiff, Plaintiff's wife, and a vocational expert (VE). (AR 61-135.) On November 21, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-54.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on February 6, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since August 26, 2013, the alleged onset date. (AR 17.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's personality disorder not otherwise specified, with anti-social traits; post-traumatic stress disorder (PTSD); obstructive sleep apnea; asthma; degenerative disc disease; status-post left foot arthrodesis of the first metatarsophalangeal joint; and obesity. (AR 17-21.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ

found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 21-23.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work, with the following additional limitations: he can lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk for up to six hours in an eight-hour workday. He cannot climb ladders, ropes, or scaffolds, and can perform all other postural activities at most frequently. He can tolerate no greater than occasional exposure to extreme cold, extreme heat, humidity, excess noise (meaning level 4 or greater (with constant exposure to noise up to level 3)), atmospherics, and workplace hazards. He can perform simple, routine, repetitive tasks (as defined by a reasoning level no greater than level 2), with no interaction with the public as part of his job duties. Incidental public contact "as defined by way of example at the hearing" is permitted. (AR 23.) He can tolerate no greater than occasional interaction with co-workers, with no "tandem tasks." (*Id.*) With that assessment, the ALJ found Plaintiff unable to perform any past relevant work. (AR 51-52.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found Plaintiff capable of transitioning to other representative occupations, including routing clerk, motel/hotel housekeeper, electronics worker, and small products assembler. (AR 52-54.)

This Court's review of the ALJ's decision is limited to whether the decision is in

accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) discounting his subjective testimony; (2) assessing the medical evidence; and (3) discounting the statements and testimony of his wife, Kathy Meadows.[2] Plaintiff argues that this case should be remanded for a finding of disability, or, in the alternative, further proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed, and that if it is remanded, it should be remanded for further proceedings because there is serious doubt as to whether Plaintiff is disabled.

<u>Plaintiff's subjective testimony</u>

The ALJ discounted Plaintiff's credibility for a number of reasons: (1) Plaintiff's most recent job as a security guard in Afghanistan ended because the contract expired, not because he could no longer perform the job; (2) Plaintiff applied for benefits twice before working in Afghanistan for a year, and reapplied upon his return, and the absence of evidence showing that his conditions worsened after he returned from Afghanistan suggests that he was not disabled after Afghanistan just as he was not disabled before Afghanistan; (3) Plaintiff engaged in activities

---

[2] Plaintiff also challenges the ALJ's RFC determination and step-five findings, but these arguments are enveloped by the other assignments of error and need not be addressed separately. *See* Dkt. 11 at 2, 17-18.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 4

inconsistent with his alleged limitations; (4) Plaintiff made inconsistent reports regarding his activities, success with treatment, use of a cane, effects of a 2003 car accident, and alcohol intake; (5) Plaintiff emphasized his prior traumatic brain injury (TBI) at many mental health appointments, but this injury is not documented in his military paperwork; and (6) Plaintiff's use of threats appears to be based on his desire to get his way, rather than uncontrollable psychiatric symptoms. (AR 25-46.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The Court will address the ALJ's reasons in turn.

A.     Contract job in Afghanistan & prior applications

Plaintiff argues that the ALJ overlooked the fact that he decided not to renew his contract job because of his impairments. Dkt. 11 at 9-10. This argument misses the ALJ's point, which is that Plaintiff was able to perform "high technical and highly demanding work" for a year, after he had claimed to have been disabled and reasserted his disability on the same grounds after returning from Afghanistan. (AR 25, 42-43.) It is the ability to perform the work that the ALJ finds inconsistent with an allegation of disability, and this a reasonable interpretation of the evidence.

Plaintiff also argues that the ALJ erred in considering his prior applications and evidence related to that time period, because the adjudicated application asserted an alleged onset date of August 26, 2013. Dkt. 11 at 10. But the ALJ explained why he looked to the earlier evidence: because it was relevant to determining whether Plaintiff's condition worsened over the years, as he alleged. (AR 15.) The earlier evidence may not be probative as to Plaintiff's functioning since August 2013, as argued by Plaintiff (Dkt. 11 at 10), but it is probative as to whether Plaintiff's condition worsened and therefore whether Plaintiff's ability to work prior to his alleged onset date suggests that he retained the ability to work after the alleged onset date. Under the circumstances

of this case, the ALJ did not err in considering evidence and applications that pre-date the alleged onset date. *See, e.g.*, *Yanes v. Berryhill*, 2017 WL 4181086, at *2-3 (E.D. Cal. Sep. 20, 2017) (finding that an ALJ did not err when considering evidence that predates the alleged onset date, because that evidence is relevant where disability is not based on a discrete event and where the evidence does not show a worsening in the claimant's condition around the time of the alleged onset date (citing *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008))).

Plaintiff goes on to argue that the ALJ mischaracterized the evidence when stating that he "asserted virtually the same impairments as he alleges in the current claim" as he did in the prior applications, without acknowledging that he alleged worsening symptoms. Dkt. 13 at 6. Plaintiff is mistaken: the ALJ did acknowledge that Plaintiff asserted that his functioning had worsened: "After denying any trauma or injuries while deployed in Afghanistan in 2012/2013 and without any evidence of intervening worsening of his preexisting impairments, the claimant asserted virtually the same claims in May of 2014, although in some areas even worse functioning than claimed before." (AR 43.) The ALJ goes on to explain why he found those reports of worsening functional limitations to be inconsistent with Plaintiff's activities, reports, and medical evidence. (AR 43-44.) Thus, Plaintiff has not shown that the ALJ misapprehended the content of Plaintiff's allegations.

B.   Activities

The ALJ explained how a number of Plaintiff's activities contradict his alleged limitations. For example, the ALJ noted that Plaintiff alleged in his function report that he did not prepare meals or perform household chores, and that he could not remember to change his underclothes daily, bathe, brush his teeth, eat, or use toilet paper without reminders from his wife. (AR 43

(citing AR 305-06).)  The ALJ contrasted those reports with his self-reported ability to work in the yard, play Bingo, take trips, visit the shooting range, help with household chores, and attend to his self-care, and noted that Plaintiff's primary care provider found that he was fully independent with basic activities of daily living.  (AR 43 (referencing AR 2058).)  The ALJ did not err in finding that Plaintiff's self-reported limitations were inconsistent with other evidence in the record, and in discounting Plaintiff's subjective testimony on that basis.  The fact that Plaintiff's activities are not transferable to a work setting does not show error in the ALJ's decision (Dkt. 13 at 9), because the ALJ cited them as evidence of inconsistency.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

C.      Inconsistent statements

        The ALJ cited multiple examples of Plaintiff's inconsistent statements, regarding his activities, lack of success with treatment, use of a cane, the details of a 2003 car accident, and use of alcohol.  (AR 44-46.)  Plaintiff does not specifically challenge most of these findings.  He does, however, argue that his 2011 report that does not mention a cane does not contradict his 2014 report that he does use a cane, because it merely shows that his condition worsened.  Dkt. 11 at 11.  But Plaintiff omits the key fact cited by the ALJ: that he claimed in 2014 that the cane had been prescribed in 2008 and he used it every day.  (AR 45 (citing AR 310).)  This portion of Plaintiff's statement renders the two statements inconsistent, and the ALJ did not err in finding that this inconsistency undermines Plaintiff's allegations.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ appropriately considers inconsistencies in plaintiff's testimony).

        Plaintiff also contends that the ALJ erred in finding that his statements regarding alcohol use were inconsistent, because he had admitted at the hearing that he used to drink a lot of beer.

Dkt. 13 at 9. This contention fails to address the ALJ's finding, however: the ALJ noted that Plaintiff reported in February 2011 that he had stopped drinking over the previous 5-6 months, but then reported in November 2011 that he had been completely abstinent from alcohol since 2008. (AR 46 (citing AR 819, 908).) In July 2014, Plaintiff reported that he drank half a glass of wine with dinner every day, but then in September 2014 he stated that he had consumed an alcoholic beverage 2-4 times per month in the past year. (AR 46 (citing AR 1403, 1479).) In April 2015, Plaintiff stated that he drank no more than one per beer per night, 4-5 nights a week, but then in September 2015 stated that he had not consumed any alcohol in the past year. (AR 46 (citing AR 1666, 2067).) Plaintiff's admission at the hearing that he used to drink "a lot" is not relevant to the ALJ's finding, and does not show that it is erroneous.

Because the ALJ cited multiple examples of inconsistencies within Plaintiff's testimony, many of which are unchallenged, the ALJ provided a clear and convincing reason to discount Plaintiff's subjective testimony.

D.     TBI

The ALJ found that

> although the claimant mentioned his history of TBI at virtually every mental appointment at the VA and at Madigan, his claims folder during his military service was silent for objective evidence of in-service head injury and/or residuals of in-service head injury, and the claimant himself did not document a 2003 or 2005 head injury on paperwork preceding his discharge in 2008.

(AR 45 (citing AR 478-79 (medical record describing Plaintiff's lack of documentation for a 2003 or 2005 in-service head injury)).) Plaintiff cites medical records that mention a TBI, but cites no evidence contradicting the ALJ's finding that Plaintiff did not report this injury until years after it allegedly took place. *See* Dkt. 11 at 12 (citing AR 446, 461, 1368-69). Plaintiff has not addressed the ALJ's rationale with respect to his delayed reporting of a TBI, which undermines the veracity

of his allegations, and therefore has not shown that the ALJ erred in discounting Plaintiff's testimony on this basis.

E.    Threats

The ALJ noted that Plaintiff's applications contained threats to the decisionmakers, indicating that they should award him benefits or run the risk of him hurting people if he was required to work again, or of him exposing the agency to negative media exposure for mistreating a veteran.   (AR 45-46 (citing AR 302, 339).)  The ALJ reasoned that Plaintiff appeared to use threats as a way to get the results he wants, rather than as a "clinically-based response to a trigger of his PTSD or anger issues."  (AR 46.)  Plaintiff does not mention this rationale in his briefing. The Court finds that this unchallenged line of reasoning supports the ALJ's assessment of Plaintiff's subjective reports, because it suggests that Plaintiff engages in angry, threatening conduct for the purpose of manipulating others (at least on some occasions), rather than because of his impairments.

Because the ALJ provided several clear and convincing reasons to discount Plaintiff's subjective testimony, the ALJ's assessment of Plaintiff's testimony is affirmed.

Medical opinion evidence

Plaintiff raises several challenges to the ALJ's assessment of the medical opinion evidence. He argues that the ALJ erred in discounting opinions provided by Laurie B. Weston, M.D.; Allan Warner, M.D.; Robert Spiro, M.D.; and Rebecca Oliver, ARNP.  Plaintiff also argues that the ALJ erred in discounting the disability ratings rendered by the U.S. Department of Veterans Affairs (VA).  Plaintiff's brief also contains a lengthy recitation of medical evidence, without explaining how the ALJ erred in assessing that evidence.  Dkt. 11 at 5-9.  Finally, Plaintiff argues that the ALJ erred in crediting State agency opinions that were written before the record was complete.

The Court will consider each argument in turn.

Legal standards

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Dr. Weston

Dr. Weston, Plaintiff's treating psychiatrist, wrote in September 2014 that when asked by Plaintiff whether he is "stable enough to work at this time," considering "[e]specially [his] ability to be around other people[,]" she believed he is not "stable enough to work at this time. Medications are still being adjusted and he is not psychiatrically able to cope with the stressors of a work situation." (AR 1479.) The ALJ found this statement to be "little more than a conclusory assertion of disability, not an assessment of the claimant's functioning. The claimant's ability to work is the ultimate issue to be decided in this case and is reserved to the Commissioner." (AR

47.)

Plaintiff argues that "Dr. Weston was qualified to state her opinion about [his] overall limitations," and that the ALJ should have deferred to her opinion. Dkt. 11 at 3. Plaintiff does not address the ALJ's specific rationale, however: he does not dispute that Dr. Weston's opinion pertains to the ultimate issue before the ALJ and does not indicate specific functional limitations. This conclusory opinion is therefore less probative to the ALJ's inquiry, and the ALJ did not err in discounting it. *See Morgan v. Comm'r Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (finding substantial evidence support for ALJ's rejection of a treating physician's opinion because the physician did not show how a claimant's "symptoms translate into specific functional deficits which preclude work activity").

Dr. Warner

Dr. Warner, a psychiatrist, examined Plaintiff in April 2015 and opined that he

> is living in a very sheltered and protective environment, in marked contrast to the world of competitive employment. Were he not so sheltered it appears as likely as not that contact with non-family members could result in physical aggression – behavior incompatible with sustained gainful employment. This is despite a great deal of treatment.

(AR 1669-70.) The ALJ discounted Dr. Warner's conclusions because he found that Plaintiff's environment was not as "sheltered and protective" as Dr. Warner believed. (AR 38.) Although Dr. Warner indicated that Plaintiff does not leave the home except for treatment appointments, the ALJ noted that Plaintiff reported elsewhere that he played Bingo once a week, visited a shooting range, and took trips with his family. (AR 44 (citing AR 328, 1517, 1594.) The ALJ did not err in discounting Dr. Warner's opinion as inconsistent with the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

<u>Dr. Spiro</u>

Dr. Spiro examined Plaintiff as part of his VA disability review in December 2013, and found that his cervical spine condition resulted in "some loss of dexterity of the left (non-dominant) hand." (AR 1105.) The ALJ gave "very little weight" to this opinion, finding that it was not supported by any "clinical findings associated with a loss of dexterity in the left hand." (AR 46.)

Plaintiff argues that the ALJ is mistaken, because Dr. Spiro documented numbness in the left upper extremity. (*See* AR 1098.) Dr. Spiro did mention numbness, but he also tested Plaintiff's muscle strength (pertaining to the elbow, wrist, and fingers) and reflexes and found that all of those attributes were normal. (AR 1101-02.) These normal findings are inconsistent with an alleged loss of dexterity.

The ALJ also discussed Plaintiff's alleged problems with his left hand in detail at step two, in rejecting his allegations of a severe impairment related to his left hand. (AR 19.) There, the ALJ cited other normal test results pertaining to strength and sensation. (*See* AR 850.)

In light of a dearth of objective clinical findings documenting a loss of dexterity specifically, the ALJ did not err in discounting Dr. Spiro's opinion regarding the impact on Plaintiff's left-hand functionality. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

<u>Ms. Oliver</u>

Ms. Oliver examined Plaintiff for disability reviews, opining on the functional impact of his foot conditions, neck conditions, respiratory conditions, and scars. (AR 1632-57.) Ms. Oliver found that Plaintiff's foot condition "severely lim[i]ts walking and standing activ[it]y and other weight bearing activity," and that his ability to perform "sedentary activity is also significantly

impacted by pain and swelling which result in severely reduced productivity and focus." (AR 1641-42.) The ALJ discounted this opinion because he found it to be based on Plaintiff's subjective complaints (AR 1636-37), rather than the treatment record: Plaintiff only complained of debilitating foot pain during VA exams and his Social Security hearing, and reported to treating providers that Advil and a new pair of shoes improved his symptoms. (AR 37.)

Plaintiff argues that contrary to the ALJ's finding, Ms. Oliver based her opinion primarily on her clinical findings and her review of the record. Dkt. 11 at 4. But Ms. Oliver's examination report does not include any clinical findings that support her conclusion, and Plaintiff does not cite any clinical findings or other portions of the record that support Ms. Oliver's opinion regarding the functional impact of Plaintiff's foot condition. Therefore, Plaintiff has failed to demonstrate error in the ALJ's reasoning.

With respect to Plaintiff's neck conditions, Ms. Oliver opined that Plaintiff's neck

[p]ain is severe and significantly limits his ability to focus and concentrate, precludes any physical labor activity and any activity that require movements of the neck to look around the environment. Would miss work [or] be late to work and require alternative work duties frequently at times of neck flare ups. Due to severity and frequency of neck flares [he] would be unlikely to be able to maintain gainful employment.

(AR 1651.) The ALJ again noted that Ms. Oliver's conclusions were inconsistent with Plaintiff's failure to report neck pain or tenderness to treating providers, as well as his normal range-of-motion testing at other times. (AR 37-38 (citing AR 1407, 1421, 1432-330).) The ALJ also emphasized that "none of the claimant's treatment providers mentioned limited head or neck mobility, which they surely would have noticed if the claimant were as limited as he claimed." (AR 38.)

Plaintiff again contends that Ms. Oliver's opinion was based primarily on her clinical

findings and her review of the record, but this argument does not pertain to the ALJ's reasons for rejecting this portion of Ms. Oliver's opinion. Plaintiff does not address the contrary findings in the remainder of the record, or explain why the ALJ erred in considering the record as a whole to determine whether Ms. Oliver's opinion was consistent with the treatment notes. The ALJ did not err in rejecting Ms. Oliver's opinion as inconsistent with the record. *See Tommasetti*, 533 F.3d at 1041 (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

VA disability rating

The ALJ summarized Plaintiff's VA disability ratings, ranging from 40% in October 2008 to 100% beginning December 2013. (AR 47.) The ALJ noted that Plaintiff was rated as 90% disabled during the year that he worked 18 hours/day in a highly skilled occupation. (*Id.*) The ALJ also discussed the rationale provided for the most recent VA rating decision, related to an increase in Plaintiff's symptoms since he returned from working in Afghanistan in September 2013, and the ALJ found "insufficient evidence of any real change in the claimant's reported functioning." (AR 47-48.) The ALJ went on to find that Plaintiff reported limitations to VA examiners that are inconsistent with the work he performed for a year in Afghanistan in 2012-13. (AR 48.)

Plaintiff argues that the ALJ erred in considering his work in Afghanistan because it was performed before his alleged onset date, but a comparison of Plaintiff's functioning pre- and post-Afghanistan is relevant in light of the VA rationale that Plaintiff's condition worsened after Afghanistan. (*See* AR 359-60.) Furthermore, contrary to Plaintiff's allegation that the ALJ "played doctor," the ALJ focused on a comparison of Plaintiff's reported functioning, which does not implicate medical expertise. (AR 47-48.) Finally, although Plaintiff argues that the ALJ

mischaracterized the reason Plaintiff stopped working in Afghanistan, he does not dispute the ALJ's point that Plaintiff was able to perform his entire contract despite his impairments. (AR 48.) The ALJ provided persuasive, specific, valid reasons to discount the VA rating. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

<u>State agency opinions</u>

Plaintiff argues that the ALJ erred in crediting the State agency opinions because they were written before the record was complete. Dkt. 11 at 9. But the ALJ reviewed the opinions in the context of the updated record and found them to be consistent (AR 49-50), and Plaintiff has not identified any specific evidence that he suggests is inconsistent with the consultants' opinions. Although Plaintiff argues that the consultants did not fully account for his own subjective symptoms, they explained that they found his reports only partially credible. (AR 137-48, 150-63.) Plaintiff has not identified an error in the ALJ's assessment of the State agency opinions.

Because Plaintiff has not established error in the ALJ's assessment of any of the challenged medical evidence, the Court affirms the ALJ's assessment.

<u>Ms. Meadows' evidence</u>

Ms. Meadows completed two third-party reports and testified at the hearing about Plaintiff's functionality. (AR 101-08, 324-31, 391-402.) The ALJ summarized Ms. Meadows' statements and found them to be contradicted by Plaintiff's ability to work in Afghanistan in 2012-13, and inconsistent with the medical record and Plaintiff's activities. (AR 50-51.) The ALJ also described Ms. Meadows' testimony as very similar to Plaintiff's testimony, and suggested that it should be discounted for similar reasons. (AR 51.)

An ALJ's reasons to discount a lay witness statement must be germane. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Plaintiff argues that similarity between Plaintiff's testimony

and Ms. Meadows' testimony is not a germane reason to discount her testimony. He is mistaken, because the reasons the ALJ provided for discounting Plaintiff's testimony apply with equal force to Ms. Meadows' statements. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). That Ms. Meadows' statements are not identical to Plaintiff's is immaterial (Dkt. 11 at 17); similarity is sufficient. *Id.*

Plaintiff also alleges that the ALJ failed to explain why he rejected Ms. Meadows' statements regarding Plaintiff's need for a cane. Dkt. 11 at 17. But the ALJ did note that although Ms. Meadows stated in 2014 that Plaintiff was prescribed a cane in 2008 and used it every day, she had not mentioned any cane in her 2011 statement. (AR 50-51.) The ALJ therefore did not overlook Ms. Meadows' statement regarding Plaintiff's need for a cane, and his reasoning regarding the 2014 statement's inconsistency with the 2011 statement is a germane reason to discount her allegations.

The ALJ also noted that at the hearing, Ms. Meadows' denied knowledge of an incident regarding a person in a wheelchair. (AR 51.) Although Plaintiff posits a theory as to why Ms. Meadows was not able to comment on this incident (Dkt. 11 at 17), the ALJ did not rely on this portion of her testimony as a reason to discount her statements, and therefore any discussion of this issue does not suggest harmful error in the ALJ's decision.

Because the ALJ cited several germane reasons to discount Ms. Meadows' statements, many of which are unchallenged, the Court affirms the ALJ's assessment of Ms. Meadows' evidence.

## <u>CONCLUSION</u>

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>10th</u> day of January, 2018.

Mary Alice Theiler
United States Magistrate Judge